IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS SIECZKA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO.: 07-CV-1849 |
| ) | |
| CANADIAN PACIFIC RAILWAY SYSTEM, ) | Judge Robert M. Dow, Jr. |
| CANADIAN PACIFIC RAILROAD, ) | |
| CANADIAN PACIFIC RAILROAD d/b/a ) | |
| SOO LINE RAILROAD COMPANY and ) | |
| CP RAIL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas Sieczka ("Plaintiff" or "Sieczka") filed suit against Defendants Canadian Pacific Railway System, Canadian Pacific Railroad, Canadian Pacific Railroad d/b/a SOO Line Railroad Co., and CP Rail (collectively "Defendants") alleging that Defendants violated the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. Presently before the Court is Defendants' motion for summary judgment [25]. For the reasons set forth below, that motion is granted. Also before the Court is Defendants' motion to strike exhibits attached to Plaintiff's Local Rule 56.1(b)(3)(C) Statements of Fact [37]. That motion is denied.

**I.     Relevant Facts**

The Court takes the relevant facts from the Defendants' Local Rule ("L.R.") 56.1(a)(1)(3) statements of material fact ("Defs. SOF") [25-2], Plaintiff's Response to Defs. SOF ("Pl. Resp.") [32], Plaintiff's L.R. 56.1(b)(3)(C) statement of material facts ("Pl. SOF") [32], and Defendants' reply to Plaintiff's SOF ("Defs. Reply") [36].[1]

---

[1] L.R. 56.1 requires that statements of fact contain material allegations and the factual allegations must be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). Material facts are those pertinent to the outcome of the issues identified in the motion for

Plaintiff was employed by Defendants as a carman. Defs. SOF ¶ 4. On April 15, 2004, he reported to work at Canadian Pacific's Bensenville Yard for the third shift, which lasted from 11 p.m. to 7 a.m. *Id*. Plaintiff had worked the same shift, in the same train yard, for approximately twenty-eight years. *Id*. His first assignment that night required him to inspect a train on track F-2 in the F Yard at the Bensenville Yard. Defs. SOF ¶ 6. He was accompanied on that assignment by a co-worker, John Dingeldein ("Dingeldein"). *Id*. During the inspection on track F-2, Dingeldein indicated that he required assistance removing an air hose. Defs. SOF ¶ 6. While Dingeldein held up a lantern to illuminate the work area, Plaintiff crouched down, planted his feet between the rails of the track on the rail ties and the ballast, and attempted to remove the air hose with a wrench. Defs. SOF ¶ 7.[2] While there were lights in the F yard, they "weren't that great," so Plaintiff needed the lantern light to perform the job. Defs. SOF ¶ 8; Pl. SOF ¶ 7. With the lantern light, Plaintiff could see the surface on which was standing. *Id*. That surface consisted solely of ballast and rail ties. *Id*.

---

summary judgment. See, *e.g.*, *Malec* 191 F.R.D. at 583. Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g.,id*. In addition, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec,* 191 F.R.D. at 584. Responses to the opposing party's statements of fact have their own requirements. If the material cited in a response does not clearly create a genuine dispute, the responding party should provide an explanation. See *Malec*, 191 F.R.D. at 584. Failure to do so results in admission of that statement. If the nonmovant desires to present facts for consideration at the summary judgment stage, those facts must be made in the nonmovant's Rule 56.1(b)(3)(C) statement. The Court may disregard additional statements of fact that are set forth in a party's response brief, but not in its statement of additional facts. See *id.* (citing *Midwest Imps., Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995)). Finally, responses based on argumentative denials also are improper. See *Malec*, 191 F.R.D. at 584.

[2] Plaintiff disagrees with Defs. SOF ¶ 7, but provides no evidence that refutes the assertion. As noted above, if the cited material does not create a general dispute over the movant's allegedly undisputed fact, the nonmovant should provide explanation. Plaintiff's response borders on non-sequitur. Plaintiff cites to statements from his deposition where he discussed the condition of the ballast. Plaintiff fails to explain how those statements create any dispute with Defs. SOF ¶ 7.

The ballast on which Plaintiff and Dingeldein were standing while attempting to repair the air hose was loose. Pl. SOF ¶ 12. It took approximately twenty minutes to remove the air hose. Defs. SOF ¶ 10. During the time that Plaintiff was changing the air hose, he shifted his footing, alternating between crouching and standing. *Id*. It is not clear whether Dingeldein also attempted to remove the air hose in Plaintiff's presence, although Plaintiff was solely responsible for the eventual removal.[3] At some point, while pulling up to remove the hose, the ballast shifted from underneath him, and Plaintiff's injury occurred. Pl. SOF ¶ 37.

Plaintiff did not immediately complain to Dingeldein that he had injured his knee. Defs. SOF ¶ 12. Dingeldein had no recollection of Plaintiff sustaining an injury that night. Defs. SOF ¶ 14. Plaintiff continued to work the remainder of his shift on April 15-16 and inspected another train. Defs. SOF ¶ 15. Plaintiff did not report the existence of any problem related to the size or condition of the ballast on the evening of the alleged injury, but he did report to his supervisor, Michael Headtke ("Headtke") on the night of his injury that he had tweaked his knee. Defs. SOF ¶ 16; Pl. SOF ¶ 24. Headtke did not complete any paperwork, nor did he require Plaintiff to complete any paperwork reporting the injury on the night of incident. Pl. SOF ¶ 27. Headtke was unaware, until after the incident, that a personal injury report was required. Pl. SOF ¶ 28. Plaintiff did prepare a report of injury on April 18, 2004 in which he stated in the "details of injury/illness" that he twisted his knee, but he made no mention of a problem with the ballast. Defs. SOF ¶ 20; Pl. SOF ¶ 30. Headtke did not ask Plaintiff to go into details beyond the twisted knee because he thought that the information included in the report "was good enough." Pl. SOF

---

[3] Plaintiff agrees with the statement that Dingeldein testified that he and Plaintiff took turns changing the hose. Defs. SOF ¶ 23. However, Plaintiff disputes the fact that "the ballast did not cause [Dingeldein] any difficulty in getting the hose off" (Defs. SOF ¶ 25), by citing to Plaintiff's testimony that Dingeldein was too large to access the air hose. Pl. Resp. ¶ 25. Finally, Plaintiff's own SOF discusses the ballast "that John Dingeldein and Thomas Sieczka were standing on when they were attempting to repair the defective hose." Pl. SOF ¶ 12.

¶ 30. Headtke filled out a supervisor's supplement to the personal injury report when he met with Plaintiff on April 18, 2004, and Plaintiff did not complain about the size or condition of the ballast at that time. Defs. SOF ¶ 21. Headtke's employer never walked him through the process involved in completing the supervisor's supplement before he filled out the report on this incident. Pl. SOF ¶ 31. Plaintiff also provided a statement of the injury to a claims agent associated with his employer and made no mention of a problem with the size or condition of the ballast in that statement. Defs. SOF ¶ 22.

Defendants use two types of ballast in the train yard where Plaintiff allegedly was injured: 2½" and ¾". Pl. SOF ¶ 1. The ¾" ballast is used on walkways because it is more suitable for that purpose. Pl. SOF ¶¶ 2, 4. The 2½" ballast is used for surfacing track to support the ties and the rails. Pl. SOF ¶ 6; Defs. SOF ¶ 26. A carman walking on either side of the F-2 track would encounter the 2½" ballast. Pl. SOF ¶ 5; Defs. Resp. ¶ 5. Prior to Plaintiff's alleged injury, both Dingeldein and Plaintiff had complained about the walking conditions in the F yard. Pl. SOF ¶¶ 10, 36, 38.

## II. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

### III. Analysis

Because the FELA is a remedial statute, courts liberally construe the statute in railroad workers' favor. *Lisek v. Norfolk and Western Ry. Co.*, 30 F.3d 823, 831 (7th Cir. 1994). At the same time, however, the Seventh Circuit recently stressed that "[a]lthough the FELA is often said to require only slight evidence of negligence, * * * *that is not what the statute says*." *Coffey v. Northeast Illinois Reg'l Commuter R.R. Corp.*, 479 F.3d 472, 476 (7th Cir. 2007) (emphasis added). Instead, pointing to a recent Supreme Court decision, the court of appeals reiterated that "'[a]bsent express language to the contrary, the elements of a FELA claim are determined by reference to the common law.'" *Id.* (quoting *Norfolk S. Ry. Co. v. Sorrell*, 127 S. Ct. 799, 805 (2007)).

The FELA permits a railroad employee to recover damages for injuries "resulting in whole or in part from the negligence" of the railroad or its agents "or by reasons of any defect or insufficiency, due to its negligence, in its * * * track, [or] roadbed." 45 U.S.C. § 51. Because "the elements of a FELA claim are determined by reference to the common law" (*Coffey* 479

5

F.3d at 476), Plaintiff must show the existence of a triable issue of fact as to the elements of duty, breach, foreseeability, and causation. *Fulk v. Illinois Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994). Although the common law standard has been relaxed in FELA cases as to the element of causation, the other elements must be established under traditional common law standards. *Coffey*, 479 F.3d at 476). Thus, as the Seventh Circuit categorically has stated, "[a] FELA Plaintiff who fails to produce even the slightest evidence of negligence will lose at summary judgment." *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7th Cir. 1998); see also *Coffey*, 479 F.3d at 477 (affirming grant of summary judgment for railroad and noting that "plaintiff, in short, has failed to make a prima facie case of negligence").

A railroad is under a general duty to furnish employees with a safe workplace. *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996). To establish a breach of that duty, the plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm. *McGinn*, 102 F.3d at 300; see also *Williams,* 161 F.3d at 1062. In addition, because liability is limited to those dangers that are reasonably foreseeable, the plaintiff must show that the employer had actual or constructive notice of the condition. *Williams*, 161 F.3d at 1062-63. Finally, the plaintiff must show that the breach caused (but only in the minimal sense required under FELA) the injury. *Id*.

At least for purposes of this motion, there are no serious disputes on the facts surrounding Plaintiff's alleged injury. Plaintiff was standing between the rails on the track, had no problem seeing in the area because of the lantern held by his co-worker, was able to observe that there was no debris present, and slipped on the 2½" ballast while attempting to remove the air hose.

Based on these undisputed facts, there can be no argument that Defendants negligently failed to illuminate the work area or allowed debris to be strewn around the tracks in such a way

as to have contributed to Plaintiff's alleged injury. Given Plaintiff's testimony that with the aid of Dingeldein's lantern he was able to see the ground on which he was standing when he injured himself and that he observed no debris in the area, any improper lighting or debris that generally may have existed in the yard would be irrelevant. Thus, the core of Plaintiff's argument is that Defendants negligently selected 2½" ballast for use on the premises.

Assuming for present purposes that, in light of the relaxed standard for causation in FELA actions, Plaintiff has met his burden that his injury was caused by the large, loose ballast of which Plaintiff complains, he still cannot defeat Defendants' motion for summary judgment. In particular, Plaintiff has failed to present evidence from which a reasonable jury could conclude that Defendants had actual or constructive notice that the use of 2½" ballast on the tracks created a hazardous conditions for workers performing the maintenance tasks in which Plaintiff was engaged at the time of his injury.

As noted above, the Seventh Circuit has held that a FELA plaintiff must show that "the employer had actual or constructive notice of the condition." *Williams*, 161 F.3d at 1063. Because it is undisputed that Defendants were responsible for creating the allegedly hazardous condition – in that they chose to use 2½" ballast on the tracks – Plaintiff need not demonstrate notice of the existence of the condition itself. In fact, Defendants do not dispute that they knew that the 2½" ballast lay along the tracks. But Plaintiff still must present evidence of notice that the condition is hazardous.

Plaintiff attempts to carry that burden by citing testimony that he and others complained about the size of ballast in the yard and how it was hazardous to walk in the yard because of the large ballast. Pl. SOF ¶ 10 (noting that Dingeldein and others "personally complained about the walking conditions, and the ballast conditions in the CP Rail's Bensenville F Yard"); ¶ 20

(noting that carmen had complained to Headtke "about ballast conditions in Defendant's Bensenville Yard"); ¶ 21 (noting that Headtke "was advised by carmen during this period from 2000-2001 to 2004 that some tracks in the Bensenville Yard were hard to walk, and had big stone"); ¶ 22 (noting that "employees complained of ballast conditions" in the F Yard "because the employees had to walk the F Yard"); ¶ 36 (stating that Plaintiff "always complained that [the ballast] was too big. Its dangerous walking"). Plaintiff states that CP Rail Supervisor Michael Headtke admitted that he was "on notice of the ballast conditions, the complaints of big stone, and bad conditions in Defendant's F-Yard." Pl. SOF ¶¶ 20-21. Plaintiff also points to the testimony of Jon Bursheim, Defendant railroad's Manager of Track Maintenance, who "testified that ¾" ballast is more suitable for walking than the 2½" ballast." Pl. SOF ¶ 4.

If Plaintiff were injured while he was walking, then the testimony of Plaintiff himself and Messrs. Digneldein, Headtke, and Bursheim may have been sufficient to defeat summary judgment. However, the evidence on which Plaintiff relies does not support the case presented on the record before this Court. It is undisputed that Plaintiff was not *walking* in the yard when his injury occurred and that no condition in the walking areas of the yard caused the injury. According to Plaintiff's own deposition testimony, his feet slipped while he was *standing* on the ballast on the *tracks*. And there is no evidence that Defendants had notice of any hazard associated with that activity in that location. See *Holbrook v. Norfolk Southern Ry. Co.*, 414 F.3d 739, 743 (7th Cir. 2005) ("[T]o succeed, [plaintiff] must not only identify a dangerous condition of which the defendant was aware, but also connect that known condition to his injury"); *Richards v. Consol. Rail Corp.*, 2001 WL 1681107, *4 (S.D. Ohio Sept. 10, 2001) ("Plaintiff has not identified any actual or constructive knowledge on the part of the Defendant that the particular section of the track on which Plaintiff was injured was unsafe"), *rev'd on other*

*grounds*, 330 F.3d 428, 430 n.1 (6th Cir. 2003) (noting that plaintiff did not appeal the dismissal of his FELA claim).

Plaintiff himself acknowledged that the ballast on the tracks at the time of his injury was the typical size ballast for that location (Def. Ex. F, p. 44, lines 14-22; see also Pl. SOF ¶ 9), and that his assignment at the time of his accident was a typical assignment that he had done many times before during his nearly 30 years as a carman (Def. Ex. F, p. 24, lines 12-19; see also see also Pl. SOF ¶¶ 4-5). Notwithstanding those undisputed facts, Plaintiff has not come forward with any evidence that he or anyone else ever had complained to Defendants that the ballast on the tracks was unsafe for standing while performing routine maintenance on trains parked on the tracks. Indeed, the evidence is undisputed that even when Plaintiff reported his injury on the night of the incident and later discussed it with his supervisor and a claim agent, he did not complain about the size or condition of the ballast or any other dangerous condition on the tracks (Def. Ex. F, p. 46, lines 7-10; pp. 60-61, p. 66, lines 8-10; see also Pl. SOF ¶¶ 20-22). In short, Plaintiff has failed to produce any evidence on that Defendants had notice (either actual or constructive) that using 2½" ballast on the tracks created a hazard for workers performing routine maintenance while standing on the tracks.

In addition to the testimony concerning the suitability (or not) of large ballast for walking surfaces in the train yard, Plaintiff attached to his opposition brief certain materials relating to "guidelines" or "industry standards" promulgated by the American Railway Engineering and Maintenance of Way Association ("AREMA") that Plaintiff contends support the proposition that Defendants "<u>knew</u> small ballast would provide better walking and working conditions." Pl. Br. at 11. Three of those exhibits simply show the purposes of the AREMA and establish that Defendants are involved in that organization. The only exhibit that actually discusses ballast

gradations, Exhibit 9, consists of a single page of the "AREMA Manual for Railway Engineering." Plaintiff cites that page in support of his contention that "AREMA provisions with respect to the use of small ¾" ballast on yard tracks states that the provision is enacted 'to provide approved walkway and safety conditions along the track."

Defendant contends that the Court should disregard the AREMA documents on a variety of grounds, including that those documents were not disclosed in discovery and that Plaintiff has not satisfied the basic prerequisites for admission into evidence, such as foundation or authentication, which apply at summary judgment. See *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000).[4] The Court need not resolve those objections, however, because Defendants are correct that "[t]here is no competent evidence that AREMA standards apply to the case at bar." Def. Reply at 6. While Plaintiff provides no context for Exhibit 9 and the small typeface on the Exhibit makes it difficult to read, the sentence on which Plaintiff principally relies appears to say that "[r]ail yards and some industrial track gradations are generally graded from 1 inch to ¾ inch (AREMA No. 5 gradation, Table 2-2), to provide improved walkway and safety conditions along the track." Plaintiff makes no effort to demonstrate that the track on which the alleged injury occurred is the kind of "industrial track gradation[]" to which this "guideline" or "industry standard" would apply. Nor does Plaintiff present any testimony that the failure to adhere to this "guideline," assuming that it applies to the track in question, could constitute a breach of the duty of care and thus give rise to an inference of negligence. Thus, even if reliance on the AREMA documents would be appropriate – a proposition that Defendants vigorously dispute – those documents do not assist Plaintiff in overcoming the absence of evidence necessary to defeat summary judgment.

---

[4] Defendant moved to strike Exhibits 6-9 [37], but that motion must be denied because Defendant failed to properly notice the motion for presentment under the applicable local rules.

The most closely analogous case that the Court has been able to locate is the Fourth Circuit's decision in *Davis v. Nat'l R.R. Passenger Corp.*, 948 F.2d 1280, 1991 WL 254135 (4th Cir. 1991) (Table).[5] In *Davis*, the plaintiff was working as a trackman and sustained an injury when he slipped on high, loose ballast. *Id*. at *1. He brought suit against the railroad alleging negligence under the FELA. *Id*. As in this case, Plaintiff in *Davis* "had been on the job for many years and had performed the same task as a routine matter throughout his employment with the railroad." *Id*. at *3. He further "acknowledged that he had seen and walked on high, loose, ballast before at various spots along the railroad, but when the accident happened, he 'just slipped.'" *Id*. at *4. And, as in this case, the railroad had not received "any complaints from workers that might have alerted it to the possible existence of an unreasonable hazard." *Id*. at *3. In those circumstances, the court affirmed summary judgment for the defendant, explaining that the plaintiff had "failed to provide the 'evidentiary link' that would show how the railroad's negligence contributed to his injury." *Id*. And, in so doing, the Fourth Circuit distinguished other cases in which "the railroad's act or failure to act was a departure from its own safety practices or had a demonstrated, logical connection to the cause of the accident at issue." *Id*. at *4.

Although *Davis* is by no means binding precedent, even in the Fourth Circuit, the Court finds the analysis in *Davis* persuasive on closely analogous facts. In view of that outcome in the most closely analogous case that the Court has found, and the Seventh Circuit's controlling

---

[5] Because *Davis* is an unpublished opinion from 1991, it lacks precedential value, even in the Fourth Circuit. Under Fourth Circuit Local Rule 32.1, while citation of unpublished dispositions prior to January 1, 2007, is "disfavored," the Court itself permits citation if a party believes that such a decision "has precedential value in relation to a material issue in a case and that there is no unpublished opinion that would serve as well." While that Local Rule applies only to litigants with respect to citation of authority in briefs and oral arguments within the Fourth Circuit, this Court believes that reliance on the case as persuasive authority is appropriate, because it appears to be the case most analogous to this one and the opinion is thorough and well reasoned.

statements of the showing required of FELA plaintiffs at the summary judgment stage in *Coffey* and *Williams*, the Court is compelled to grant Defendants' motion for summary judgment. This is, to be sure, a difficult decision, but one that comports with the statute, the pertinent case law, and the record compiled by the parties in the case. To place this decision in context, the Court again quotes from the Fourth Circuit's decision in *Davis*:

> "Congress has chosen to retain a fault-based system for railroad workers, despite repeated efforts to reform the FELA into a worker's compensation scheme and despite the fact that workers in almost every other industry are protected from on-the-job injuries regardless of fault. FELA leads to some unfortunate results for workers who are injured on the job in situations, like the one at hand, where no one is particularly at fault but where a worker's compensation scheme would allocate the irreducible risk of injury to the employer, rather than to individual employees."

1991 WL 254135, at *4. That may appear to be an unexpected state of affairs, given that when the FELA was enacted a century ago, it provider railroad workers with more, not less, protection in the event of injury than many other workers. See *Williams*, 161 F.3d at 1061. But the FELA never has been, and still is not today, "an insurance statute" (*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 554 (1994)), and this Court must take both the record and the statutory scheme as it finds them. Because Plaintiff has failed to provide any sort of evidentiary link that would indicate actual or constructive notice to Defendants that the use of 2½" ballast on the tracks constituted a hazard for workers engaged in routine maintenance activities while standing on the tracks, summary judgment in favor of Defendants is appropriate.[6]

---

[6] Plaintiff's suggestion that *Taylor v. Illinois Central R.R.*, 8 F.3d 584 (7th Cir. 1993), stands for the proposition that "complaints of large ballast are sufficient to create a question of fact to be determined by a jury" is misplaced. In *Taylor*, the Court simply held that the district court did not abuse its discretion in excluding Rule 702 opinion testimony on ballast caliber on the ground that lay jurors could understand that issue without the assistance of an expert. *Id*. at 585-86. Nothing in that decision even discusses the elements of an FELA claim, including the reasonable foreseeability element as to which Plaintiff cannot carry his burden to avoid summary judgment.

## IV.     Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [25] is granted and Defendants' motion to strike [37] is denied.

Date:    September 23, 2008

_____
Robert M. Dow, Jr.
United States District Judge